499 So.2d 733 (1986)
Mary B. ALMANZA, Plaintiff-Appellant,
v.
FORD MOTOR COMPANY, et al., Defendants-Appellees.
No. 86-60.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1986.
James D. Davis, Alexandria, for plaintiff-appellant.
David P. Spence of Gist, Methvin, Hughes & Munsterman, Alexandria, for defendants-appellees.
Before GUIDRY, DOUCET and YELVERTON, JJ.
GUIDRY, Judge.
Plaintiff, Mary B. Almanza, appeals a judgment of the district court in favor of defendants, Ford Motor Company and Hanna-Abington Alexandria, Inc., dismissing, at her costs, the action in redhibition she brought against defendants. We affirm.
On June 7, 1984, plaintiff purchased a 1984 Ford Escort from defendant Hanna-Abington. Between that date and April 8, 1985, the date suit was filed, Ms. Almanza returned the auto to defendant a total of six (6) times for service. Two of those times involved complaints of "failure to run" which were directly traced to water in the distributor cap, a result of the car being driven through high water. This was plaintiff's complaint on February 25, 1985, the last time Ms. Almanza requested that defendants attempt any repairs on the vehicle. Subsequent to February 25, 1985, plaintiff complained that the car began to stall on an increasing basis. She, however, despite the fact that the vehicle was still under warranty and all previous repairs were made at no expense to plaintiff, did not return the vehicle to Hanna-Abington for repairs. Ms. Almanza did not seek to have repairs undertaken by any other service facility but continued to operate the car in its alleged "unsatisfactory" condition.
In his reasons for judgment, the trial judge stated:
"Plaintiff's main complaint at this time is that the engine stalls or dies when slowing down or coming to a stop for a traffic signal. All of the witnesses who appeared for plaintiff had either ridden with Mrs. Almanza or had driven the car. They testified that the car often dies when slowing down for a curve or traffic signal. Each of the witnesses stated that they had observed this difficulty subsequent to February of 1985.
Mrs. Almanza stated that she had not taken the car back to Hanna-Abington after February 25, 1985 as she did not believe that they would be able to repair it. She also stated that no one else attempted to look for the trouble or make any repairs due to her belief that her warranty may be affected.
There was no evidence that there was a defect in the vehicle which could not be corrected by a simple adjustment. None of the witnesses called by plaintiff stated that there was any problem with the car other than it stalling or dying.
. . . . .
Mrs. Almanza's complaint at the present time is limited to the vehicle *734 stalling or the engine dying. The testimony of the service manager and the service invoices indicate that defendant was never asked nor given the opportunity to correct this alleged defect.
Plaintiff failed to present any evidence to indicate the reason for the dying of the engine. There was not [sic] testimony to whether this condition could be remedied or what would be the cost of correcting the problem.
Defendant's witnesses testified that correcting the problem in the vehicle would be a matter of a simple adjustment which they would undertake if given the opportunity.
. . . . .
Plaintiff, therefore, cannot recover until defendant is given an opportunity to repair the vehicle and fails to do so."
The present case is similar, in many aspects, to the case of Dickerson v. Begnaud Motors, Inc., 446 So.2d 536 (La.App. 3rd Cir.1984), writ denied, 449 So.2d 1349 (La. 1984). In Dickerson, supra, this court stated:
"The statutory basis for the action in rehibition is Civil Code Art. 2520, which provides:
§ 1Of the Vices of the Thing Sold, Which Give Occasion for the Redhibitory Action
Art. 2520. Redhibition, definition. Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
To prevail in an action for redhibition, the vendee must establish that the defect existed at the time of purchase, but was neither known or apparent to him. He must also prove that the thing sold is absolutely useless for its intended purpose or that its use is so inconvenient that it must be supposed that the vendee would not have made the purchase had he known of the defect.
Furthermore, when a seller is in good faith, he must be given an opportunity to repair the thing before a redhibitory action can be brought, whereas a bad faith seller has no corresponding right. LSA-C.C. Arts. 2531 and 2545; Jordan v. LeBlanc and Broussard Ford, Inc., 332 So.2d 534 (La.App. 3rd Cir.1976); Associates Financial Services Co. v. Ryan, 382 So.2d 215 (La.App. 3rd Cir.1980).
. . . . .
Plaintiff made no showing of bad faith on the part of Begnaud, whose primary duty therefore is only to repair, remedy or correct the vice as provided in LSA-C.C. Art. 2531. This article also provides a secondary duty to restore the purchase price and reimburse expenses when the good faith seller is unable to repair, remedy or correct the vice. Article 2531 fails to set forth the terms and conditions of the good faith vendor's right to repair, leaving open the question: When does the vendor's right to repair end and the vendee's right to rescission begin?
We conclude that the statute envisions that a reasonable opportunity be afforded to the vendor to repair the defect. As we stated in Jordan v. LeBlanc and Broussard Ford, Inc., supra:
`Until the legislature provides specific rules concerning the terms and conditions of the right to repair, there is no alternative in the judiciary but to decide each case on its peculiar circumstances with due regard being given to the competing interests of the consuming public and the retailers and manufacturers.'

Jordan v. LeBlanc and Broussard Ford, Inc., supra, at 538."
In the present case, plaintiff's situation is much more tenuous than that of the plaintiff in Dickerson, supra. Larry Dickerson, at least, proved that there was a latent problem with the steering mechanism in the auto he purchased. He, however, failed to prove bad faith on the part of defendants. Ms. Almanza not only failed to prove bad faith, but she also failed to establish that any specific defect existed in the car at the time of the sale. In fact, all she proved was that, subsequent to February *735 25, 1985, she experienced trouble with the car stalling, but took no action whatsoever to correct this problem.
La.C.C. art. 2531 states in pertinent part: "The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices ... or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it."
The record clearly establishes and the trial judge correctly found that plaintiff had not provided defendants with ample opportunity to repair, remedy or correct the alleged vices of the automobile and, accordingly, redhibition could not be had. For the same reasons, he found quanti minoris inappropriate. We find no error in these findings.
Therefore, for the reasons stated, we affirm the judgment of the trial court. All costs of this appeal to be taxed against appellant.
AFFIRMED.